## Dr. H. Daret *v.* Captain A. G. Gray.

Where a runaway slave is received on board ship by an imposition practiced on the officers by a forged pass and calculated to deceive, and it is clear from the evidence that the officers were actually deceived thereby, the owner recovering such slave is not entitled to damages from the master of the vessel on account of the deterioration in value of the slave by his running away; this viciousness of character was manifested before he was received on board the ship by his running away and procuring the forged pass.

Masters of ships and other vessels being prohibited, by the third section of the Act of 1816, from transporting or attempting to transport any negro, mulatto or other person of color, from New Orleans, *under any pretence whatsoever*, without the performance of certain prescribed formalities, the failure by the officers of the ship to conform to the requirements of the law, will make the master liable for the reasonable expenses of the owner in recovering his slave, and this on general principles as well as by the terms of the fourth section of the Act of 1816.

The master of a ship is bound to third persons, both by the commercial law and this statute, for the acts of all persons under, or supposed to be under, his command, while engaged about their ordinary duties as subordinate officers of the ship or as seamen.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *C. Janin*, for plaintiff and appellant. *W. H. Hunt*, for defendant.

MERRICK, C. J. The plaintiff was in March, 1854, the owner of a mulatto man, a mulatto woman and their two children. These slaves being in possession of forged papers, obtained tickets from the Pacific Mail Steamship Company for a passage from New Orleans to Aspinwall, and went aboard the steamship Eldorado, about the 23d of March, 1854, and proceeded with the steamship to the Balize, where they were discovered through the agency of a telegraphic dispatch, and were secured and returned with the pilot (who took out the Eldorado) to this city. The plaintiff alleges that the slaves were received

on the steamship without the consent of the petitioner; that by the receiving of said slaves on board the said steamer, the defendant caused him damages to the amount of four hundred and forty-five dollars and twenty-five cents, viz, four hundred dollars for depreciating the value of the said slaves and forty-five dollars and twenty-five cents for telegraphic dispatches, public notices in several papers, jail fees, &c. He prays for a judgment accordingly, and a privilege upon the steamship. The answer was a general denial. There was judgment for the defendant, and the plaintiff is the appellant.

The testimony shows that the papers produced by the slaves to the agent of the steamship company, purported to be executed before two prominent notaries of this city, and were well calculated to deceive any person except those most thoroughly acquainted with the hand writing of the notaries; that it is customary to examine the tickets of the passengers and search for secreted negroes only after leaving the wharf at New Orleans, on account of the crowd and on account of the intrusion of persons at the departure of the steamships; that this duty is performed by the purser, assisted by the steward and other hands; that the tickets and free papers of the slaves were examined and being supposed to be in due form, they were permitted to proceed; that the captain has no agency in issuing the tickets and receiving the same, or examining the passengers, and that in this instance, as soon as he received the telegraphic dispatch, he took the responsibility of returning the slaves to the city; that they were received by the plaintiff and that the ninety dollars paid by them for their passage was also paid over to him.

It will be observed that this suit is not brought to recover a statutory penalty, but, *first*, the depreciation in value of the slaves consequent upon their having runaway or absconded on board of the vessel; and, *secondly*, costs charges and money expended in recovering the slaves.

We do not think the first ground can be maintained. The proof, it is true, shows that the plaintiff sold the slaves and that he suffered large deductions from their apparent value, on account of their having runaway. The habit of running away is a vice inherent in the slave. That vice had developed itself before the slaves went on board the defendant's ship. It was when they procured their forged papers and clandestinely left their master's house to go on board of the ship, that they became runaways. They were corrupt when they imposed their purchased forgeries upon the officers of the ship, and the captain of the ship cannot be held responsible for the deterioration in the value of the slaves, which he had no agency in producing, and who was only made, by a neglect of a form of law, the instrument of giving greater publicity to such defects.

On the second branch of the plaintiff's demand, we observe that by the third section of the Act of 1816, masters of ships and other vessels are prohibited under any pretence whatsoever from transporting or attempting to transport any negro, mulatto or other person of color from New Orleans, without taking such person before the Mayor and having lodged with him a declaration containing a description of such negro, mulatto or other person of color, and having satisfied the Mayor by authentic proof, or the oaths or the affidavits of two credible witnesses, or the written direction of the owner, and having obtained from the Mayor a written certificate. In the other parishes, the like duty is to be performed by the Judge. See Bullard & Curry's Dig. p. 253-4.

DARET
v.
GRAY.

This precaution, which might have prevented the injury, was not observed by the officers of the ship and the defendant is liable for the reasonable expenses of the plaintiff in recovering his property, which was made more difficult to recover by the negligence of the officers of the steamship. The fourth section of the Act makes the master liable for the damages which the owner of the slaves sustains, and we think he would be responsible, on general principles, without the aid of this section. It is no answer to the plaintiff's action that the negligence was that of other persons, and that he had in fact no agency in receiving the slaves on board of the ship. He is bound to third persons, both by the commercial law and the Statute, for the acts of all persons under or supposed to be under his command, while engaged about their ordinary duties as subordinate officers of the ship or as seamen. If some of these duties are entrusted to third persons, he must assure himself that their acts which he finds himself, from the nature of his office, obliged to endorse, are not unlawful. 17 L. R. 545, 546.

It is, therefore, ordered, adjudged and decreed, by the court, that the judgment of the lower court be avoided and reversed. And it is now ordered, adjudged and decreed, that the plaintiff recover and have judgment against the said defendant, A. G. Gray, for the sum of thirty-four dollars, with legal interest thereon, from the third day of May, 1854, and that the defendant pay the costs of both courts.